Rita LaCHANCE, executrix of the estate
of Lionel R. LaChance, deceased

v.

SERVICE TRUCKING CO., Inc., a body
corporate, and Norman E. Wisseman,
Defendants and Third-Party Plaintiffs,

v.

Marcel R. LaCHANCE, Third-Party
Defendant.

Rita LaCHANCE

v.

SERVICE TRUCKING CO., Inc., a body
corporate, and Norman E. Wisseman,
Defendants and Third-Party Plaintiffs,

v.

Marcel R. LaCHANCE, Third-Party
Defendant.

Muriel M. WEBBER

v.

SERVICE TRUCKING CO., Inc., a body
corporate, and Norman E. Wisseman,
Defendants and Third-Party Plaintiffs,

v.

Marcel R. LaCHANCE, Third-Party
Defendant.

Elizabeth LaCHANCE

v.

SERVICE TRUCKING CO., Inc., a body
corporate, and Norman E. Wisseman,
Defendants and Third-Party Plaintiffs,

v.

Marcel R. LaCHANCE and Merle
W. Webber, Jr., Third-Party
Defendants.

Civ. Nos. 13101–13104.

United States District Court
D. Maryland.

Sept. 11, 1962.

Sigmund Levin and Paul Berman, Baltimore, Md., John G. Marshall and Laurier T. Raymond, Jr., Lewiston, Me., for plaintiffs.

Samuel S. Smalkin, Robert J. Thieblot and Rollins, Smalkin, Weston & Andrew, Baltimore, Md., for Service Trucking Co., Inc., and Norman E. Wisseman, defendants and third-party plaintiffs in all four cases.

Herbert F. Murray and Clater W. Smith, Baltimore, Md., for Marcel R. LaChance, third-party defendant.

James D. Peacock, John H. Mudd and Semmes, Bowen & Semmes, Baltimore, Md., for Merle W. Webber, Jr., third-party defendant.

THOMSEN, Chief Judge.

Marcel R. LaChance and Merle W. Webber, Jr., third-party defendants herein (sometimes referred to as LaChance and Webber), have filed motions to quash the service of process on them and to dismiss for improper venue the third-party complaints. They are the driver and owner respectively of a station wagon which, in February 1960, in North Carolina, collided with a tractor-trailer owned by defendant Service Trucking Company and operated by defendant Wisseman. Three of the four plaintiffs in the cases above captioned were passengers in the station wagon; the fourth is the executor of a passenger who was killed. LaChance and Webber also filed actions (Nos. 13105 and 13106) in this Court in June 1961 for their damages arising out of the accident.

All six of the persons in the station wagon were citizens of Maine; Service is a Maryland corporation; Wisseman was a citizen of Delaware at the time the suits were filed, but is now a citizen of Maryland.[1]

In November 1961 Service and Wisseman were granted leave to make LaChance and Webber third-party defendants in the action brought by Elizabeth LaChance and to make LaChance a third-party defendant in the actions brought by Rita LaChance, executrix, by Rita LaChance, personally, and by Muriel M. Webber. The third-party complaints were filed and process was served on John Thomas Welsh, attorney for LaChance and Webber in the actions they had filed in this Court as plaintiffs. Motions to quash the service and to dismiss the third-party actions for improper venue were promptly filed, and after argument were granted, without prejudice, by Judge Northrop. Later, Judge Northrop granted defendants' motions to vacate the orders insofar as they dismissed the third-party complaints.

Meanwhile, the plaintiffs in all six actions had filed motions to consolidate the actions for trial on the issues of liability only, and, no cause to the contrary having been shown, it was ordered that they be so consolidated.

On July 17, 1962, defendants served notices in the two actions filed by LaChance and Webber, respectively, that they would take the depositions of both LaChance and Webber at a certain office

[1]. Both defendants filed answers to the six complaints; later, both filed motions under 28 U.S.C.A. § 1404(a) to transfer the actions to the Eastern District of North Carolina, and Wisseman asked leave to withdraw his answers and to file motions to quash on the ground that he was not a resident of Maryland and that the answers had been inadvertently filed. Those motions were denied by this Court.

in Baltimore, Maryland, on July 31. La-Chance and Webber thereupon moved, under Rule 30(b), F.R.Civ.P., 28 U.S. C.A., for a protective order. Each motion requested the following alternative relief: "(d) In the event that the depositions be taken in Baltimore at the time set, that counsel for the defendants, and the defendants, be ordered to refrain from actual service of summons or attempt to make service of summons upon the said [LaChance in one motion, Webber in the other], in the third party actions pending in this Court during the period of his trip to, attendance at, and trip from the said deposition taking, in order that his rights as a litigant to bring suit for his injuries may be fully protected and immunized from harassment, annoyance and oppression while he is in attendance in this District in connection with any necessary proceedings to enforce his rights." After a hearing, the motions for protection orders were denied by Judge Northrop, who directed LaChance and Webber to appear in Baltimore for their pretrial depositions pursuant to the notice.[2]

When LaChance and Webber came to Baltimore pursuant to the notice and the order, they were served personally with summonses to answer the third-party complaints. It was stipulated by and between counsel for LaChance and Webber as plaintiffs in the actions they had brought, counsel for the plaintiffs in the other four actions, and counsel for the defendants Service and Wisseman, that consistent with the provisions of Rule 26(d), F.R.Civ.P., the deposition of each plaintiff could be used by any party at the consolidated trial of all the cases on the issues of liability.

Counsel who now represent LaChance and Webber as third-party defendants were present at the taking of the depositions but did not participate. Each of the third-party defendants has now filed motions (1) to quash the service on the ground that he is a non-resident of Mary-land and was served when he came to Baltimore as directed by the order of the Court, and (2) to dismiss the third-party actions because "none of the plaintiffs or the third-party defendant are residents of the District of Maryland, and all of the defendant third-party plaintiffs are not residents of this District."

### Motions to Quash

The parties are agreed that the motions to quash the service raise a procedural question, governed by federal law. The controlling principles were stated by the Supreme Court in Lamb v. Schmitt, 285 U.S. 222, 52 S.Ct. 317, 76 L.Ed. 720, where the Court said (citations omitted): "The general rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit are immune from service of process in another, is founded, not upon the convenience of the individuals, but of the court itself. * * * As commonly stated and applied, it proceeds upon the ground that the due administration of justice requires that a court shall not permit interference with the progress of a cause pending before it, by the service of process in other suits, which would prevent, or the fear of which might tend to discourage, the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation." (p. 225, 52 S.Ct. p. 318). After quoting a similar statement of the rule from an earlier case, the Court continued: "It follows that the privilege should not be enlarged beyond the reason upon which it is founded, and that it should be extended or withheld only as judicial necessities require." (p. 225, 52 S.Ct. p. 318). The Court noted that limitations of the rule on that basis had been made because the service was on one whose attendance was not voluntary, and hence had no tendency to interfere with judicial administration. The question in Lamb v. Schmitt, however, was of a somewhat different character, namely: "Whether a person who was

---

2. Judge Northrop indicated that they could protect any rights they might have by filing motions to quash after they were served.

present as an attorney and officer of the court in the conduct of the principal cause, was immune from the service of process in a summary proceeding to compel restoration of the subject matter of the suit wrongfully removed from the custody of the Court." The Supreme Court held that the "deterrent effect, if any, upon attendance at the trial, of the possibility that these procedures may be resorted to, is outweighed by the fact that the immunity, if allowed, might paralyze the arm of the court and defeat the ends of justice in the very cause for the protection of which the immunity is invoked." (p. 226, 52 S.Ct. p. 318). The Court added: "These considerations have in special circumstances led to a denial of the immunity, even though the service was made in an independent suit in no sense ancillary to the pending litigation. * * * But it is not necessary to go so far in the present case. Here the two suits, pending in the same court, are not independent of each other or unrelated." After discussing that relationship the Court concluded: "Judicial necessities require that such immunity should be withheld," and stated: "The test is whether the immunity itself, if allowed, would so obstruct judicial administration in the very cause for the protection of which it is invoked as to justify withholding it." (p. 228, 52 S.Ct. p. 319).

In Roth v. W. T. Cowan, Inc., E.D. N.Y., 103 F.Supp. 203, a summons and third-party complaint had been served on the driver of a truck involved in the accident out of which the suit arose, while he was in New York pursuant to a notice for the taking of his deposition served by the plaintiff in that suit. Judge Abruzzo held the service good. After quoting at length from Lamb v. Schmitt, he said: "In the case at bar the third-party complaint is ancillary to the main action, and the issues should be tried at one and the same time. Under these circumstances, judicial necessities require that immunity should be withheld. There is nothing to indicate that the withholding of immunity would in any way obstruct judicial administration in the very cause

for the protection of which it is invoked." (pp. 204–205).

The reasons for refusing immunity in the case at bar are stronger than in Roth v. W. T. Cowan, Inc. The persons served as third-party defendants in the four passenger cases voluntarily selected this court as the forum in which to bring their own cases as plaintiffs, despite the fact that they might have served the defendants in state or federal courts in North Carolina, Delaware and other states. The six actions have been consolidated for trial, at the request of the six plaintiffs. It will facilitate the ultimate disposition of the issues raised by those cases considered as a group to permit the third-party claims—for contribution by the defendants therein against two of the plaintiffs—to be disposed of at the trial of the principal case, rather than to require the defendants to go to Maine or elsewhere to enforce their third-party claims. It would appear that even if the third-party complaints were dismissed or died on the vine, the findings on the issues of negligence and contributory negligence of the several parties in the six cases which have been consolidated for trial in this court would probably be binding on the parties in any action for contribution which might thereafter be filed. However, counsel herein have been unwilling to agree to that proposition, and it is probable that in any such further proceedings troublesome questions of res judicata and collateral estoppel would be presented, and that a complete retrial of all the issues might be required. Such a result should be avoided, if possible. This case seems to meet the most severe test suggested by Lamb v. Schmitt; it is clearly a situation in which immunity should be denied under the rationale of the general rule and the limitations thereon approved in that case.

The authorities cited by the third-party defendants do not require a contrary result. In Page Co. v. MacDonald, 261 U.S. 446, 43 S.Ct. 416, 67 L.Ed. 737, the party served in the federal court case was present within the district as plain-

**660**

tiff in a state court attending a hearing before a special master. The federal action was for a libel alleged to have been published by the defendant in the state court proceeding. So, although the second case grew out of the first, they were entirely separate actions, and could not have been tried together. Peet v. Fowler, E.D.Pa., 170 F. 618, was decided before Lamb v. Schmitt, and states the general rule without discussion of the tests or exceptions approved by the Supreme Court in the later case. In International Plastic Harmonica Corp. v. Harmonic Reed Corp., E.D.Pa., 69 F.Supp. 515, the person served was not a party to the original case, but was in Pennsylvania voluntarily to testify for the plaintiff therein. The two cases were related, but could not have been tried together without interrupting the trial of the original action.

In United Nations v. Adler, S.D.N.Y., 90 F.Supp. 440, immunity was granted to a man who, while in New York to testify in an action in which he was the defendant, was served with a summons and third-party complaint in a second, related action. Judge Medina pointed out that aid to the court in the second proceeding is not sufficient to deny the immunity, otherwise it would be denied in every case; that immunity should be denied only when, upon a balancing of the various factors involved, it is found that to grant it would, on the whole, impair the just and proper administration of justice. He noted that in various jurisdictions, where the party sued was the plaintiff in the original suit, the courts have differed in their conclusions as to whether immunity should be allowed. This is not surprising, because some states, like Maryland, apply a rigid rule,[3] whereas the federal rule requires a balancing of the various factors involved.

In the case at bar the weights on the side of denying the immunity and sustaining the service are unusually heavy and over-balance the weights on the other side of the scale.

*Venue*

The North Carolina law[4] has been construed by Judge Gilliam to provide the substantive basis for filing a third-party complaint against a joint tort feasor in such a case as this. Keller v. Kornegay, E.D.N.C., 9 F.R.D. 103. In line with the weight of authority, he held that diversity between the plaintiff and the third-party defendant is not necessary; that jurisdiction of the court was fixed when the suit was brought by a citizen of one state against a citizen of another; and that the controversy between the original defendant and the third-party defendant was ancillary to the main action. See 3 Moore's Federal Practice, 2d ed., para. 14.26; Foster v. Brown, D.Md., 22 F.R.D. 471. Since the jurisdiction is ancillary, a third-party defendant, properly served, has no objection based on venue. Moore, op. cit., para. 14.28; Lesnik v. Public Industrials Corp., 2 Cir., 144 F.2d 968; Malkin v. Arundel Corp., D.Md., 36 F.Supp. 948.

It should be noted that the filing of the third-party complaints in the four cases does not permit the plaintiffs therein to amend their pleadings to state claims against the third-party defendant(s), since there is no diversity of citizenship between the plaintiffs and the third-party defendants and no other ground for federal jurisdiction over such claims. Moore, op. cit., para. 14.27.

*Order*

The motions of the third-party defendants are hereby denied.

---

3. The Maryland state practice is controlled by Maryland Rule 104 g. See also J. & H. Stable, Inc. v. Robinson, 221 Md. 365, 157 A.2d 451, which refers to Stewart v. Ramsay, 242 U.S. 128, 37 S.Ct. 44, 61 L.Ed. 192, but not to Lamb v. Schmitt.

4. See General Statutes of North Carolina, secs. 1–240.