George T. McGONIGLE

v.

**PENN–CENTRAL TRANSPORTATION COMPANY, a body corporate.**

**PENN–CENTRAL TRANSPORTATION COMPANY (now known as Penn Central Company)**

v.

**Verdoine D. SALUTI and Albert T. Saluti, individually and Trading as Tri-State Flour Company.**

**Civ. No. 20010.**

United States District Court
D. Maryland.

July 17, 1969.

Bernard M. Savage, Milton R. Jones and Savage, Jones, Tingle & Schwartzman, Baltimore, Md., for plaintiff.

Clayton W. Daneker, Thomas F. Comber, 3rd, and Constable, Alexander & Daneker, Baltimore, Md., for defendant and third-party plaintiff.

Hamilton O'Dunne and William A. Hegarty, Baltimore, Md., for third-party defendants.

FRANK A. KAUFMAN, District Judge:

This is an action brought by the plaintiff, George T. McGonigle, under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60. McGonigle contends that he was injured by the negligent operation of a railroad locomotive by his employer, Penn-Central Transportation Company (Penn-Central), the defendant herein. Penn-Central denies any negligence on its part, and, in addition, has filed a third-party complaint under Rule 14(a) of the Federal Rules of Civil Procedure against Verdoine D. Saluti and Albert T. Saluti, individually and trading as the Tri-State Flour Company (Tri-State). Service of the third-party complaint upon the third-party defendants was accomplished under Rule 4(f) of the Federal Rules of Civil Procedure. In the third-party complaint, Penn-Central claims that any liability which might be established against it by McGonigle should be borne by Tri-State, alleging that Tri-State negligently graded an area surrounding a loading platform upon which McGonigle was standing at the time he was struck by a passing locomotive. That platform was located on property situate in Millbourne Mills, Up-

per Darby Township, Delaware County, Pennsylvania,[1] and leased by Penn-Central to Tri-State. Penn-Central contends that Tri-State, by its negligent grading operations, changed the position of the loading platform, that the accident would not have occurred and McGonigle would not have been injured but for that negligence, and that if Penn-Central is liable to McGonigle, Tri-State is in turn liable to Penn-Central both in negligence and under the indemnifying provisions of the lease.

The third-party defendants (Tri-State) have moved to dismiss the third-party complaint for lack of subject matter jurisdiction, venue and proper service. Penn-Central is a Pennsylvania corporation doing business within the State of Maryland. The third-party defendants assert that they do no business in Maryland and that they are citizens of Pennsylvania. That assertion is assumed to be factually and legally accurate for purposes of this opinion.

■ Primary jurisdiction in the action brought by McGonigle against Penn-Central is founded upon a federal question. McGonigle does not seek any recovery against the third-party defendants. The impleader has been instituted by Penn-Central and is ancillary to the primary action. Thus, no independent basis is needed to support the subject matter jurisdiction of this Court in connection with the third-party complaint. In Southern Milling Co. v. United States, 270 F.2d 80, 83–84 (5th Cir. 1959), the Court held:

\* \* \* The Federal jurisdiction of the suit of the United States against Southern Milling Company was based upon a Federal cause of action and under a statute which provided for exclusive jurisdiction in the Federal courts. 15 U.S.C.A. § 714b. A third-party proceeding under Rule 14 must be ancillary to the claim originally asserted although the third-party claim need not be identical with the plaintiff's claim or rest upon the same theory. American Fidelity & Casualty Co. v. Greyhound Corporation, 5 Cir., 1956, 232 F.2d 89. The third-party claim of Southern Milling Company against Meddin Packing Company was ancillary to the original suit. Where the claim is ancillary the right to assert and maintain the third-party claim is unaffected by the fact that the third-party claimant and the third-party defendant are residents of the same state; and it is unnecessary, where the original suit is based upon a Federal cause of action, that the third-party claim should involve a Federal question. 3 Moore's Federal Practice 499, Par. 14.26.

*See also* La Chance v. Service Trucking Co., 208 F.Supp. 656, 660 (D.Md.1962). *See generally* 3 Moore, Federal Practice ¶ 14.26 (2d Ed.1968). That doctrine is based "not on any theory of extension of jurisdiction but in order to effectively dispose of the entire related litigation in the suit which is already properly before the court and thus carry out the purpose of Rule 14." Sheppard v. Atlantic States Gas Co., 167 F.2d 841, 845 (3d Cir. 1948). For the same reasons, venue requirements are satisfied if they are complied with in the primary action.[2] La Chance v. Service Trucking Co., *supra*; 2 Moore, *supra*, ¶ 14.28[2].

---

1. Penn-Central and Tri-State have informed this Court that the leased property and Tri-State's principal place of business are both within 100 miles of the location of this Court.

2. Rule 4(f), which permits process to be served within the 100-mile bulge, "does not affect \* \* \* subject matter jurisdiction or venue of the federal courts.

\* \* \*" Wright & Miller, Federal Practice and Procedure: Civil § 1127, at p. 533 (1969). Indeed, both the Rules Enabling Act, 28 U.S.C. § 2072, and Federal Civil Rule 82 provide that no federal rule of procedure, in and of itself, increases jurisdiction. In this case, subject matter jurisdiction and venue exist, as they must, independently of Rule 4(f).

■ There remains the contention of the individual third-party defendants that this Court lacks jurisdiction over them as persons because they are not amenable to service in Maryland under Maryland standards, including its long-arm statute,[3] even though service was properly made on them pursuant to the 100-mile bulge provisions of Rule 4(f). That proposition was recently presented to the United States Court of Appeals for the Second Circuit and was rejected by that Court in Coleman v. American Export Isbrandtsen Lines, Inc., 405 F.2d 250 (2d Cir. 1968). In that case, a longshoreman, allegedly injured while aboard the defendant's ship in Hoboken, New Jersey, sued the shipowner, and the latter filed a third-party complaint claiming (at 251):

> that any liability to Coleman on its part would be due to the negligence of Atlantic & Gulf in having failed properly to secure a hatch when the Exchequer was in Philadelphia, Pa. before sailing to Hoboken. * * *

The Second Circuit's opinion noted (at 251):

> Atlantic & Gulf is a Pennsylvania corporation, having its principal office in Philadelphia and engaged in stevedoring at that port but assertedly not doing business in New York. The summons and complaint were served by a United States marshal on Atlantic & Gulf at its Philadelphia office, avowedly pursuant to the second sentence of F.R.Civ.P. 4(f). * * *

■ Atlantic & Gulf moved to dismiss the third-party complaint for lack of jurisdiction. The District Court granted the motion. The Second Circuit reversed in an opinion by Judge Friendly in which he wrote (at 251):

> The service of process here appears to fit the language of the Rule snugly enough. Atlantic & Gulf was brought

in as a party pursuant to Rule 14. It was served in the manner provided in Rule 4(d) (3). And the place of service was not more than 100 miles from the Federal Courthouse in the Southern District of New York.

> Atlantic & Gulf contends that the new provision of Rule 4(f) simply allowed service outside the state where the court is sitting with respect to persons already subject to the jurisdiction of that state. For example, if Atlantic & Gulf had been doing business in New York but had no office there, the amendment would permit personal service to be made on it in Philadelphia pursuant to Rule 4(d) (3). * * *

Rejecting that contention Judge Friendly commented (at 251–252):

> If the [1963] amendment [to Rule 4(f)] had done no more than that, it would have accomplished little. Most states have * * * statutes providing for out-of-state service on persons subject to the jurisdiction of their courts, and Rule 4(d) (7) was amended in 1963 to overcome whatever doubts had previously existed as to the ability of a federal court to utilize these. * * * The Notes of the Advisory Committee * * * show that the purpose of the amendment [to Rule 4(f)] was not simply to provide a second way of serving persons already subject to the state long-arm statutes, but rather to allow complicated controversies to be ended by a single lawsuit if all the necessary third parties could be found within 100 miles of the courthouse. * * *

See also Kaplan, Amendments to the Federal Rules of Civil Procedure, 1961–1963, 77 Harv.L.Rev. 601, 629–632 (1964). Given the power of the federal Congress to extend, nationwide, the territorial jurisdiction of a federal district

---

3. It would appear, although it is not necessary to decide, that the individual third-party defendants are not amenable to service under Maryland's long-arm statute,

court, regardless of state boundaries (which was exercised, for example, in the federal interpleader statute, 28 U.S.C. § 2361), the constitutionality of the 100-mile bulge provision for federal service of process is, *a fortiori*, unquestionable. Nor is the validity of this part of Rule 4(f) drawn into question because it was enacted as a rule of procedure rather than a statute.

> * * * Congress could provide for service of process anywhere in the United States. * * * Congress, having omitted so to direct, the omission was supplied by Rule 4(f) of the Rules of Civil Procedure, * * *. [Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 442–443, 66 S.Ct. 242, 245, 90 L.Ed. 185 (1946), discussing another part of Rule 4(f).]

*See also* 2 Moore, *supra* at ¶ 4.42[2]; Kaplan, *supra* at 632. And in *Coleman*, Judge Friendly, to the same effect, wrote (at 252):

> * * * Since Congress has power "to provide that the process of every District Court shall run into every part of the United States," Robertson v. Railroad Labor Board, 268 U.S. 618, 622, 45 S.Ct. 621, 69 L.Ed. 1119 (1925), the Supreme Court as its delegate can provide that process shall be effective if served within 100 miles of the courthouse even if a state line intervenes, and we are convinced that Rule 4(f) exercised this power.

 The fundamental federal policy underlying the 100-mile bulge provi-

sion of Rule 4(f) is that the benefits that may be obtained from the disposition by a federal court of an entire controversy far outweigh the burden of requiring an appearance in a federal court located in a state other than his own, by an impleaded party properly served within the modest bulge area around the forum.[4] The fact that the state, in which a federal district court sits, does not adopt that policy, insofar as its own state courts are concerned, cannot be permitted to affect the duty of a federal court, which is part of "an independent system for administering justice,"[5] to effectuate the federal policy enunciated in a rule whose constitutionality is established. Indeed, were the application of the 100-mile bulge provision of Rule 4(f) to turn on standards set by the forum state, that provision would be a dead letter in any state which chose not to have any long-arm statute—a result which would clearly thwart federal policy. In order fully to effectuate federal policy, the 100-mile bulge provision of Rule 4(f) must be applied independently of the service provisions of the forum state.

 Nevertheless, the application of the 100-mile bulge provision in a given individual case may still perhaps be limited by concepts of the due process clause. Commenting on the 1963 changes in Rule 4(f), Professor Kaplan stated:

> The amendment is certainly not intended to hold [a] corporation to

---

4. "In the light of present-day facilities for communication and travel, the territorial range of the service allowed * * * can hardly work hardship on the parties summoned. * * * Any requirements of subject-matter jurisdiction and venue will still have to be satisfied as to the parties brought in, although these requirements will be eased in some instances when the parties can be regarded as 'ancillary.'" Notes of Advisory Committee on Rules in connection with the 1963 amendments, 28 U.S.C.A. Fed.R.Civ.P. 4(f). *See also* the reference in the Notes of the Advisory Committee in connection with the 1966 amendments to Federal Civil Rule 19 concerning situations in which comprehensive joinder may not be attainable "because of limitations on service of process, subject-matter jurisdiction, and venue." 28 U.S.C.A. Fed. R.Civ.P. 19. In the case at bar, as discussed *supra*, ancillary jurisdiction and venue are present.

5. Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 537, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

judgment if the sole contact is the fact of service. Considerations of fairness to the party, viewed in the light of the animating purpose of the amendment, ought to control; and it seems a roughly accurate formula of decision to hold that the party should be amenable to the federal process if, considering its activities within the forum state plus the 100-mile area, it would be amenable to that state's process, had the state embraced this area and exerted judicial jurisdiction over the party to the degree constitutionally allowable. [Kaplan, *supra* at 633; footnote omitted].

Thus, when a sufficient nexus is not established by certain minimal contacts of a defendant with the bulge area, the considerations of basic fairness expressed in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), might raise a constitutional bar to service of process under Rule 4(f) and jurisdiction over the person so served. *See also* Wright & Miller, Federal Practice and Procedure: Civil § 1127, at pp. 532–33 (1969). Since the amendment to Rule 4(f) has, in effect, created a new territorial unit independent of state lines, the appropriate inquiry would appear to be what contacts the person served has had with that territorial unit. The principal office of the individual third-party defendants in this case (Tri-State) is located

within the 100-mile bulge area and they did business at the place of the accident, also within that area. Under those circumstances, there is no constitutional barrier to their being served in this case under Rule 4(f) within the 100-mile bulge area.[6]

For the reasons stated in this opinion, Tri-State's motion to dismiss for lack of subject matter jurisdiction, venue and proper service is denied.[7]

6. Whether contacts with any part of the state of service, even outside the 100-mile bulge area, are sufficient, poses a question which does not require an answer in this case, since the individual third-party defendants herein have sufficient contacts with that part of Pennsylvania, the state of service, within the 100-mile bulge area around the situs of this Court in Baltimore, Maryland. *See* Kaplan, *supra* at 633 n. 136. Nor is there any question in this case that the third-party defendants are amenable to this suit in a Pennsylvania court under Pennsylvania's standards. Thus, they are not only

persons over whom Pennsylvania has jurisdiction but are also persons over whom Pennsylvania has chosen to exercise service. *See* Coleman v. American Export Isbrandtsen Lines, Inc., *supra*, 405 F.2d at 252, discussing Arrowsmith v. United Press International, 320 F.2d 219, 6 A.L.R.3d 1072 (2d Cir. 1963).

7. The third-party defendants have also moved to dismiss on the grounds that the third-party complaint fails to state a claim upon which relief can be granted. That contention is without merit and is denied.