Virginia H. PIERCE, and Morris W. Pierce, Infant, by Virginia H. Pierce, his mother and next friend, and Michael A. Pierce, Infant, by Virginia H. Pierce, his mother and next friend, and Rosalie Pierce, Infant, by Virginia H. Pierce, her mother and next friend, and Michael D. Varbalow, Administrator of the Estate of Morris T. Pierce, Deceased,

v.

**GLOBEMASTER BALTIMORE, INC.,**

v.

Robert W. SEIP, Individually, and Trading as Winters Hardware Co., and Arthur A. Goodhart.

Civ. No. 20446.

United States District Court
D. Maryland.

Dec. 24, 1969.

Marvin H. Schein and Bellis, Kolsby & Wolf, of Baltimore, Maryland, for plaintiffs.

Benjamin C. Howard and Robert L. Karwacki, Baltimore, Md., for defendant and third-party plaintiff.

Thomas G. Andrew and Rollins, Smalkin, Weston & Andrew, Baltimore, Md., for third-party defendant Robert W. Seip.

Delverne A. Dressel, Baltimore, Md., for third-party defendant Arthur A. Goodhart.

FRANK A. KAUFMAN, District Judge:

On October 3, 1967, Morris Pierce, a resident of New Jersey and a painter by trade, was engaged in work upon the Grace Evangelical Lutheran Church in Reading, Pennsylvania when a rope supporting him broke, causing him to fall and to sustain injuries which are alleged to have caused his death. This case originated in a suit brought by Pierce's wife on behalf of herself and her three minor children and also by the Administrator of Pierce's estate. Mrs. Pierce and her children are residents of Pennsylvania; the Administrator is a resident of New Jersey. The defendant, Globemaster Baltimore, Inc. (Globemaster), is a Minnesota corporation with its principal place of business in Maryland. Jurisdiction of that original case is based upon diversity of citizenship. Globemaster is alleged negligently to have caused the manufacture of the rope to specifications set by it, thereby bringing into use a rope which did not support the weight that it should have borne. Globemaster denies its negligence and also has instituted a third-party complaint against Robert Seip, of Reading, Pennsylvania, and Arthur Goodhart, of Pottstown, Pennsylvania, alleging that Globemaster sold the rope to Seip, trading as Winters Hardware Co., that Winters sold it to Goodhart, Pierce's employer, that if there was any defect in the rope (which Globemaster denies), it was caused wholly or partially by Winters or by Goodhart, and that, in any event, Goodhart's failure to provide Pierce with a safe place of work and with proper equipment was the proximate cause of his death. Both third-party defendants have moved to dismiss Globemaster's third-party complaint, alleging lack of jurisdiction and citing the lack of coverage of the Maryland long-arm statute.[1]

Service was accomplished in accordance with Federal Civil Rule 4(f). The parties have stipulated that the distance between Baltimore and Reading is 97 miles by road and 91 miles by air and that the distance between Baltimore and Pottstown is 105 miles by road and 94 miles by air.

██ Rule 4(f) "does not affect * * subject matter jurisdiction or venue. * * * " Wright & Miller, Federal Practice and Procedure: Civil § 1127, at p. 533 (1969). *See also* the discussion in McGonigle v. Penn-Central Transportation Company, 49 F.R.D. 58 (D.Md. July 17, 1969). In this case, there is diversity of citizenship between each of the plaintiffs on the one hand and the defendant Globemaster on the other hand, and also between Globemaster on the one hand and each of the third-party defendants on the other hand.[2] By way of contrast, the Pierces and both of the third-party defendants are Pennsylvania citizens. But that identity of citizenship between some of the plaintiffs in the original suit and the two third-party defendants is not material since "diversity between the plaintiff[s] and the third-party defendant[s] is not necessary. * * [J]urisdiction of [the] court was fixed when the [original] suit was brought by * * * citizen[s] of [two] state[s] against a citizen of * * * [another state]. * * * [T]he controversy between the original defendant and the third-party defendant[s] was ancillary to the main action." LaChance v. Service Trucking Co., 208 F.Supp. 656, 660 (D.Md.1962). *See generally* 3 Moore, Federal Practice ¶ 14.26 (2d Ed.1968).

---

1. It would appear, although it is not necessary to decide, that neither of the third-party defendants is amenable to service under Maryland's long-arm statute.

2. Even if the third-party claimant, Globemaster, and either or both of the third-party defendants were citizens of the same state, that fact would not affect Globemaster's right to assert and maintain its third-party action, since the latter is ancillary to the suit by plaintiffs against Globemaster. *See* Southern Milling Co. v. United States, 270 F.2d 80, 83–84 (5th Cir. 1969).

And once ancillary jurisdiction is established, "third-party defendant[s], properly served, * * * [have] no objection based on venue." LaChance v. Service Trucking Co., *supra* at 660.

■■ There remains the question of whether either or both of the third-party defendants is or are amenable to service under Rule 4(f) in connection with Globemaster's third-party action. Seip was served and resides—and his hardware proprietorship is located and regularly does business—in Reading, which is within 100 miles of the federal courthouse in Baltimore, Maryland, where this forum is located. And that is true whether the distance between Baltimore and Reading is measured by road or by direct air route. On the other hand, Goodhart was served and resides in Pottstown which is within the 100-mile bulge area if the distance is measured by air miles but is without that area if the distance is instead measured by road miles. While there is little or no case law on the subject and no guidance is seemingly afforded by the Advisory Committee notes, this Court is persuaded by, and adopts, Professor Wright's view that air-mile calculations provide a simple and controversy-free solution to bulge area measurement problems. Wright & Miller, Federal Practice and Procedure: Civil § 1127, at p. 531 n. 22 (1969). Utilizing the air mile approach, this Court holds that Goodhart, as well as Seip, was served within the bulge area. In addition, Goodhart did business within the 100 mile bulge and had, as did Seip, sufficient contacts with the bulge area to meet the minimal constitutional nexus requirements of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), assuming without holding that those latter requirements apply. *See* Kaplan, Amendments to the Federal Rules of Civil Procedure, 1961–1963, 77 Harv.L.Rev. 601, 633, quoted from and discussed in McGonigle v. Penn-Central Transportation Company, *supra.*

■ In *McGonigle*, this Court quoted extensively from and relied heavily upon Judge Friendly's opinion in Coleman v. American Export Isbrandtsen Lines, Inc., 405 F.2d 250 (2d Cir. 1968). In *Coleman* and in *McGonigle*, the original lawsuits were grounded in federal question jurisdiction. In *Coleman*, a longshoreman instituted suit against a shipowner for injuries alleged to have occurred aboard one of its vessels; in *McGonigle*, suit was instituted by a railroad employee against his employer under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60. In this case, diversity of citizenship provides the federal jurisdictional base for the original action against Globemaster. It could be argued that when jurisdiction in the original suit rests upon diversity of citizenship—as opposed to federal question jurisdiction—Rule 4(f) does not render third-party defendants found in, and possessing sufficient contacts with, the bulge area, amenable to the process of the forum court, "when the applicable state law does not authorize service outside the state. * * * [But if that contention is accepted,] the liberalizing purpose of the 100-mile provision would be subverted." Wright & Miller, Federal Practice and Procedure: Civil § 1075, at p. 314 (1969). Still, "the limited case law to date is inconclusive and some of it indicates that Rule 4(f) does not deal with amenability to suit." Wright & Miller, *supra* at 1127, p. 534, citing at n. 40 Karlsen v. Hanff, 278 F.Supp. 864 (S.D.N.Y. 1967), and Sevits v. McKiernan-Terry Corp., 270 F.Supp. 887 (S.D.N.Y.1967). It is to be noted, however, that the views expressed in *Karlsen* were characterized by Judge Friendly as being "to the same effect" as those of the District Court which Judge Friendly reversed in Coleman v. American Export Isbrandtsen Lines, Inc., *supra,* 405 F.2d at 251.[3]

---

3. As Judge Friendly noted, *Sevits* is contra to *Karlsen*. In *Coleman*, Judge Friendly rejected the *Karlsen* position.

*Coleman* is clear authority for the view that the fundamental thrust of Rule 4(f) is amenability to suit of the third party or parties. This Court, as it did previously in *McGonigle,* espouses that view.

Prior to *Coleman,* in Arrowsmith v. United Press International, 320 F.2d 219, 6 A.L.R.3d 1072 (2d Cir. 1963), Judge Friendly, writing for eight members of a nine-judge en banc court, held that a federal district court sitting in Vermont could not, in a diversity suit, hold a defendant amendable to suit in that forum unless the defendant would have been so amenable under Vermont law in a suit in the state courts of that jurisdiction. While conceding that Congress could constitutionally establish a federal standard for personal jurisdiction in diversity cases, Judge Friendly found "nothing in the concept of diversity jurisdiction that should lead us to read into the governing statutes a Congressional mandate, unexpressed by Congress itself, to disregard" the policy established by each state. Arrowsmith v. United Press International, *supra,* 320 F.2d at 226. Even assuming the *Arrowsmith* doctrine applies in third-party litigation (but see, in a multi-party situation, Szantay v. Beech Aircraft Corp., 349 F.2d 60 (4th Cir. 1965)), it is clear here, as Judge Friendly also noted in *Coleman,* 405 F.2d at 252, after referring to *Arrowsmith,* "that Pennsylvania can and does provide" that the third-party defendants herein can be served in Pennsylvania. Thus, if Pennsylvania law applies, the services upon Messrs. Seip and Goodhart were each valid. If Maryland state law applies and permits service, then Rule 4(f) is not needed to accomplish service which could be made under Federal Civil Rule 4(d) (7) or 4(e). Indeed, Rule 4(f) would have accomplished little had it done no more than provide for out-of-state service on persons already subject to the jurisdiction of the state in which the federal forum is located. Coleman v. American Export Isbrandtsen Lines, Inc., *supra,* 405 F.2d at 252; McGonigle v. Penn-Central Transportation Company, *supra.*

Rule 4(f) has no effect, by its own terms, on service upon the original parties. Roscoe-Ajax Construction Co. v. Columbia Acoustics & Fireproofing Co., 39 F.R.D. 608 (S.D.N.Y.1966); Wright & Miller, Federal Practice and Procedure: Civil § 1127, at p. 531 n. 24. Rather, Rule 4(f) applies in third-party cases and its design is etched to "allow complicated controversies to be ended by a single lawsuit if all the necessary third parties could be found within 100 miles of the courthouse." Notes of the Advisory Committee with regard to the 1963 amendment to Rule 4(f). Judge Soboleff emphasized that type of approach in Szantay v. Beech Aircraft Corp., *supra,* in which he did not apply the doctrine announced in *Arrowsmith,* a two-party case, to a multi-party case, noting the lack of any strong state policy to the contrary and the important "countervailing federal considerations" (349 F.2d at 64), namely, "efficient joinder in multi-party actions" (at 66).

 Extra-territorial service statutes, such as the Interpleader Act, 28 U.S.C. § 2361, are applicable in diversity cases. Utilizing Rule 4(f), "the Supreme Court, as the delegate" (Coleman, *supra,* 405 F. 2d at 252) of Congress has provided for service in cases like the instant one within the 100 mile area around the forum courthouse. There would seem to be no constitutional (*see* Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed. 2d 8 (1960)) or other bar to the application of Rule 4(f) in a third-party case borne out of the diversity of citizenship between the parties to the original suit, as well as in a third-party case in which jurisdiction in the original case is rooted in a federal question.

For the reasons stated in Coleman v. American Export Isbrandtsen Lines, Inc., *supra,* in McGonigle v. Penn-Cen-

tral Transportation Company, *supra,* and herein, the motions of the third-party defendants to dismiss the third-party complaint are denied.