John J. SPROW, Plaintiff,

v.

HARTFORD INSURANCE COMPANY et al., Defendants-Third Party Plaintiffs-Appellants,

v.

Arnold L. BRESEMAN et al., Third Party Defendants-Appellees.

Anna Mae Magash KELLER, Plaintiff,

v.

HARTFORD INSURANCE COMPANY et al., Defendants-Third Party Plaintiffs-Appellants,

v.

Arnold L. BRESEMAN et al., Third Party Defendants-Appellees.

Nos. 76–1093, 76–1094.

United States Court of Appeals, Fifth Circuit.

April 23, 1979.

---

Paul V. Cassisa, Metairie, La., for Hartford Ins. Co., etc.

John D. Lambert, Jr., New Orleans, La., for L. D. Gollott, et al.

A. J. McNamara, Metairie, La., for E. M. Gollott, et al.

A. Remy Fransen, Jr., New Orleans, La., C. Scott Carter, New Orleans, La., for St. Paul Companies, et al.

Gibson Tucker, Jr., New Orleans, La., for Anna M. M. Keller.

Jerald N. Andry, Gilbert V. Andry, III, New Orleans, La., for John J. Sprow.

Before GEWIN, GEE and RUBIN, Circuit Judges.

GEWIN, Circuit Judge:

In these consolidated appeals appellants Hartford Insurance Company, L. D. and Helen Pickich Gollott, E. M. Gollott and Franklin Morgan challenge a summary judgment dismissing their third party and cross claims against Frazier Insurance Company, Arnold Breseman and the St. Paul Companies (St. Paul) for lack of *in personam* jurisdiction. We affirm in part, reverse in part and remand for further proceedings.

The matter before us arose from civil actions filed in district court by John Sprow and Anna Mae Keller against appellants. The suits had their genesis in a motor vehicle accident near Port Sulphur, Louisiana, where an automobile driven by Sprow and in which Keller was a passenger collided with a truck owned by E. M. Gollott and driven by Franklin Morgan. Both Sprow and Keller were injured.

The truck was being driven to New Orleans to obtain oysters for the mutual benefit of L. D. Gollott and his brother, E. M. Gollott, each of whom operated a seafood business in Biloxi, Mississippi.[1] Sometime earlier the Gollott brothers had entered into an agreement to send the truck to Louisiana on a regular basis for the purpose of delivering oysters to their respective businesses. Under the agreement, E. M. Gollott was to furnish the truck and L. D. Gollott was to procure and maintain insurance on the vehicle. At the time of the agreement, L. D. Gollott had an insurance policy with appellant Hartford Insurance Company, but the policy did not cover the truck to be used in this venture. Before the accident, L. D. Gollott allegedly contacted appellant Breseman of Frazier Insurance Agency in Pascagoula, Mississippi, Hartford's representative, and instructed him to add the truck to his existing policy with Hartford. Breseman, Frazier and Hartford denied making this addition to the policy, or that such an addition could be made.

Sprow and Keller commenced their actions against the appellants on November 2, 1972. Thereafter appellees Frazier and Breseman were joined as third party and cross defendants by the appellants for their alleged negligence in failing to procure the coverage allegedly requested on E. M. Gollott's truck. Appellants also joined St. Paul as a third party or cross defendant because it was the errors and omissions insurer of Frazier.[2] Both Frazier and Breseman were served with process in Pascagoula, Mississippi, and St. Paul was served through the Louisiana Secretary of State. Appellees moved to dismiss all claims on grounds that the federal district court, sitting in New Orleans, Louisiana, lacked personal jurisdiction over them as residents of Mississippi. After a hearing, Judge Comiskey denied the motion.

 Judge Comiskey then resigned from the bench and the case was reassigned to Judge Boyle. After further discovery, Judge Boyle suggested that appellees resubmit the jurisdictional ground in a motion for summary judgment. Appellees filed the motion and the court granted it, dismissing Frazier, Breseman and St. Paul from the proceedings. In its opinion the court reasoned that appellees Frazier and Breseman did not have sufficient "minimum contacts" with the State of Louisiana for the district court to invoke the state's long-arm statute to obtain jurisdiction over them.[3]

---

1. The company operated by L. D. Gollott was owned by his wife Helen Pickich Gollott who also participated in its management.

2. Appellees were also joined as original party defendants.

3. The court's dismissal of St. Paul did not rest on a lack of Louisiana contacts, but on the failure of appellants to establish the nexus between the action against St. Paul and Louisiana required by Louisiana law. St. Paul was joined pursuant to La.Rev.Stat.Ann. § 22:655 (West 1978), the Direct Action Statute, which permits an injured party to bring a direct action against the insurer of the alleged tortfeasor. This statutory right exists only when the tort giving rise to the insurer's liability occurred in Louisiana or the insurance policy was issued in the state. *E. g., Morse v. Hartford Casualty Insurance Co.*, 301 So.2d 741, 744 (La.App.1974), *citing Webb v. Zurich Insur. Co.*, 251 La. 558, 205 So.2d 398 (1967).

Appellants assert as an initial contention that the district court erred in finding a lack of minimum contacts. They argue that the requirements of both due process and the Louisiana Long-Arm Statute were satisfied by the fact that the Frazier agency, through its agent Breseman, frequently used the Hartford Regional Office in New Orleans to procure insurance for its clients.

The Louisiana Long-Arm Statute has been interpreted to extend to the fullest limits of due process in permitting the exercise of *in personam* jurisdiction over non-residents. *Buckley v. New York Times Company,* 338 F.2d 470, 472–73 (5th Cir. 1964). Thus, we are confronted in this case with synonymous state and federal principles. Due process, of course, requires that there exist a quantity of meaningful contacts between a non-resident party and the forum state making it reasonable and consonant with " 'traditional notions of fair play and substantial justice' " to subject the party to the jurisdiction of the forum. *E. g., Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132, 141 (1978); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Great Western United Corp. v. Kidwell,* 577 F.2d 1256, 1266 (5th Cir. 1978).

■ Having reviewed Frazier's and Breseman's activities, we find ourselves in agreement with the district court's judgment that appellees did not have the necessary minimum contacts with Louisiana under the long-arm statute.

Frazier is located in Pascagoula, Mississippi. Breseman, a partner in the agency, also works as its agent and lives in Pascagoula. Frazier, through its agents, procures policies from various insurance companies for persons in that locale. One of those companies is Hartford which had a regional office in New Orleans. Frazier processes applications for Hartford policies through the New Orleans office. This pro-

cedure entails some degree of communication between Frazier and the New Orleans office. However, that communication represents the only real connection of Breseman and the agency with the state of Louisiana, and when considered in light of appellees' overall activities, is insufficient to support *in personam* jurisdiction.

Neither Frazier nor Breseman has offices or salesmen in Louisiana and the company does not supply services or attempt to sell policies in the state. There is no evidence that appellees derive economic benefits from Louisiana and neither pay taxes to the state. Frazier is licensed solely in Mississippi. Moreover, the Hartford insurance contract which underlies the third party and cross-claims against appellees, was issued in Mississippi and related to a truck registered in Mississippi and owned and used by Mississippi residents.

Given the paucity of Louisiana contacts, it would contravene due process to find appellees amenable to process under the state long-arm statute. We therefore affirm the district court's findings on this issue.

■ As a second contention, appellants argue that the court may exercise jurisdiction over Frazier and Breseman by virtue of Rule 4(f), Federal Rules of Civil Procedure. Rule 4(f) provides that third party and cross defendants may be served with process "at all places outside the state but within the United States that are not more than 100 miles from the place in which the action is commenced, or to which it is assigned or transferred for trial."

Both parties presented this issue to the court below, but Judge Boyle did not address it in his opinion. Appellants argued that the service on Frazier and Breseman was proper because the Frazier office is within the 100 mile bulge. To this end they

The court found that St. Paul's issuance of the errors and omissions policy and Breseman's and Frazier's alleged negligence in amending the Hartford policy both occurred in Mississippi. The summary judgment was thereby granted as to St. Paul also.

Though appellants claim Judge Boyle erred in dismissing all three appellees, they limited their argument to the court's conclusions on the amenability of Breseman and Frazier. Finding no error in the court's dismissal of St. Paul, we affirm this portion of the judgment.

offered an affidavit by appellant's counsel that a Louisiana National Guard official had informed him that the distance between Pascagoula Airport and New Orleans Lakefront Airport in air miles, measured "as the crow flies", is 85 miles. The appellees disputed these allegations concerning the applicability of Rule 4(f) and the distance from Frazier's office to the federal courthouse for the Eastern District of Louisiana. They claimed that sufficient minimum contacts with the forum state is a necessary prerequisite to valid service of process under Rule 4(f) and that they are beyond the 100 mile limit when measured properly by road miles. In dismissing Breseman and Frazier from the lawsuit, the court relied solely on the absence of sufficient Louisiana contacts.

This court is satisfied, however, that Rule 4(f) offers a distinct basis for the court's jurisdiction, if the place of service, Frazier's office, is located within the 100 mile bulge. We are unable to determine that distance because of the almost total dearth of factual evidence in the record on this point.[4]

Appellees argue, as they did below, that Rule 4(f) is limited by the constitutional requirement that the recipient of process have minimum contacts with the forum state. This argument follows the decisions of some federal courts which hold that 4(f) relates only to the manner and scope of extraterritorial service of process, and not to amenability of the party served to the forum's jurisdiction. *Coleman v. American Export Isbrandtsen Lines, Inc.,* 405 F.2d 250, 253 (2d Cir. 1968); *Pillsbury Co. v. Delta Boat & Barge Rental, Inc.,* 72 F.R.D. 630, 632 (E.D.La.1976); *Spearing v. Manhattan Oil Transportation Corp.,* 375 F.Supp. 764, 771 (S.D.N.Y.1974); *Karlsen v. Hanff,* 278 F.Supp. 864, 865 (S.D.N.Y.1967); *see also Deloro Smelting & R. Co. v. Engelhard Minerals & C. Corp.,* 313 F.Supp. 470 (D.N.J.1970); *McGonigle v. Penn-Central Trans. Co.,* 49 F.R.D. 58 (D.Md.1969).

These cases state that Rule 4(f) may be invoked only if the jurisdictional standards of due process are otherwise satisfied. *E. g., Pillsbury, supra* at 632; *Karlsen, supra* at 865.

This court agrees that application of the 100 mile bulge provision is limited to some extent by the due process clause. The promulgation of Rule 4(f) was an exercise by Congress of its lawful power to provide for service of process in any part of the United States. *Miss. Pub. Corp. v. Murphree,* 326 U.S. 438, 442–444, 66 S.Ct. 242, 90 L.Ed. 185 (1946); *see Robertson v. Railroad Labor Board,* 268 U.S. 619, 622, 45 S.Ct. 621, 69 L.Ed. 1119 (1924). Yet, it is possible that a set of facts may arise where it would be fundamentally unfair to subject a party served within the bulge area to the forum's jurisdiction. The clearest example that comes to mind is that of a corporation whose only contact with the forum state or bulge area is its officer's temporary presence within the bulge at the time of service.

Following the basic constitutional principles in this area, we believe the appropriate due process rule which governs Rule 4(f) is whether the party served had minimum contacts with the forum state *or* the bulge area so that it is fair and substantially just for the forum to impose a judgment upon the party. This criterion is appropriate for two reasons.

First, since the 100 mile bulge provision has effectively expanded the territorial jurisdiction of a federal district court beyond state lines, the logical test for due process purposes is the connection between the nonresident and the geographical area included within that jurisdiction. Professor Kaplan advocated this approach in his article concerning the enactment of the bulge provision.

> [I]t seems a roughly accurate formula of decision to hold that the party should be amenable to the federal process if, considering its activities within the forum state plus the 100 mile area, it would be

---

**4.** Frazier and Breseman have pointed to no record evidence to support their position that the place of service is outside the 100-mile radius. Appellants' only proof, the affidavit, is conclusory hearsay. Because of the shortage

of evidence on the location of the Frazier office and its distance from the federal courthouse in New Orleans, we are unable to take judicial notice of the fact of distance.

amenable to that state's process, had the state embraced this area and exerted judicial jurisdiction over the party to the degree constitutionally allowable. (footnote omitted)

Kaplan, *Amendments of the Federal Rules of Civil Procedure,* 1961–1963, 77 Harv.L. Rev. 601, 633 (1964).

Second, to require a sufficient nexus with the forum state, as appellees suggest, would eviscerate Rule 4(f), reducing it to merely a secondary means of serving persons already subject to the forum state's jurisdiction through its long-arm statutes. *Coleman v. American Export Isbrandtsen Lines, Inc.,* 405 F.2d 250, 252 (2d Cir. 1968). This was not the intent of Congress or the rule's drafters. The Advisory Committee Notes on the rule reveal that the bulge provision was enacted to effect an important federal policy.

> The bringing in of parties under the 100-mile provision in the limited situation enumerated is designed to promote the objective of enabling the court to determine entire controversies. In the light of present-day facilities for communication and travel, the territorial range of the service allowed, . . . can hardly work hardship on the parties summoned. The provision will be especially useful in metropolitan areas spanning more than one state.

28 U.S.C.A. Fed.R.Civ.P. 4(f).

Judge Friendly aptly paraphrased this legislative purpose in *Coleman.*

> [Rule 4(f)] allow[s] complicated controversies to be ended by a single lawsuit if all the necessary third parties [can] be found within 100 miles of the courthouse.

405 F.2d at 252.

Our development of a governing constitutional rule must take into account this sig-nificant procedural policy. Otherwise, the application of Rule 4(f) will be unreasonably constructed and the objective of efficient adjudication of extraterritorial disputes will be thwarted. We believe a due process requirement of a meaningful nexus with the bulge area *or* forum state strikes a reasonable balance between the legislative interest and the interest of the non-resident in fundamental fairness.

■ Assuming the Frazier office was within the 100 mile bulge, both appellees had a sufficient connection with this area to be subjected to process. The facts discussed above reveal that Frazier was essentially a local concern, serving a clientele in and around Pascagoula. Breseman was a partner and agent of the agency. It is evident that both appellees secured most of their economic benefits from this region of Mississippi. Moreover, this complex action with multiple parties and different claims is exactly of the type for which the 100-mile provision was designed.

■ A final question requires our disposition: By what method is the district court on remand to measure distance? The comments on the rule do not address this matter. However, we are convinced that the simplest and most proper method is the straight lines or "as the crow flies" measure of air miles. As Professor Moore notes, this uniform formula of calculation is consistent with the bulge provision's liberal purpose of facilitating the disposition of entire controversies.[5] It is also a uniform standard, offering more certainty than a measure based on road miles, which will continually fluctuate as new and different routes are constructed. A number of our courts have adopted the "as the crow flies" mode of calculation. *Lee v. Ohio Cas. Ins. Co.,* 445

---

5. This 'bulge' service is but a mild stretch [of territorial limits on service] . . . While the wording does not make clear how the distance of 100 miles is to be calculated in close cases, since the purpose of this provision is mildly to extend the territorial limits of effective service of the federal courts to facilitate determining whole controversies, the method of calculation which would lend itself to this objective should be followed.

> Thus such service should be allowed in any place within the United States which is within a radius of 100 miles "as the crow flies" from the federal court in which the action is pending (footnote omitted). This bulge service provision will have its greatest impact in metropolitan areas closely linked, but separated by state boundaries.

Moore's Federal Practice ¶ 4.42, at 4–533–34.

F.Supp. 189, 193 n.12 (D.Del.1978); *Pillsbury Co. v. Delta Boat & Barge Rental, Inc.*, 72 F.R.D. 630, 631 (E.D.La.1976); *Deloro Smelting and Refining Co. v. Engelhard Minerals and Chemicals Corp.*, 313 F.Supp. 470, 473–75 (D.N.J.1970); *Pierce v. Globemaster Baltimore, Inc.*, 49 F.R.D. 63, 66 (D.Md.1969), and we elect to embrace it as the standard for this circuit.

We therefore remand to the district court for a factual determination of whether the place of service was within the 100 mile radius, as measured by air miles. If the court finds Breseman and Frazier to be within the bulge, the service was proper and the court has personal jurisdiction over the appellees.[6]

AFFIRMED IN PART, REVERSED IN PART and REMANDED WITH INSTRUCTIONS.