**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 7 1998**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RENETTA M. MIERA,

       Plaintiff-Appellant,

v.

DAIRYLAND INSURANCE
COMPANY,

       Defendant-Appellee.

Nos. 97-2048, 97-2135

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-96-136-M)**

---

Edmund R. Pitts (David Graham with him on the briefs), Law Firm of David Graham,
Taos, New Mexico), for Plaintiff-Appellant.

Kathryn D. Lucero (J. Douglas Foster with her on the briefs), Foster, Johnson, Harris, and
McDonald, Albuquerque, New Mexico, for Defendant-Appellee.

---

Before **PORFILIO**, **LOGAN,** and **MURPHY**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

Renetta M. Miera instituted this action in New Mexico state court seeking a declaratory judgment and other relief to confirm the terms of an arbitration award assessing her property and personal injury damages resulting from a collision she had with an uninsured motorist. Dairyland Insurance Company, her insurer, removed the action to federal court based on diversity jurisdiction and obtained not only judgment on the merits but also attorney's fees and costs levied personally against Ms. Miera's attorney under 28 U.S.C. § 1927. We hold the district court properly exercised jurisdiction over this action and correctly applied *Quinones v. Pennsylvania General Ins. Co.*, 804 F.2d 1167 (10th Cir. 1986), to permit Dairyland to offset amounts previously paid against the total award of damages under the uninsured motorist provision of the insurance contract. However, the court erred in finding, under the circumstances of this case, Ms. Miera's counsel's failure to cite *Quinones* demonstrated reckless disregard of his duty of candor to the court, unreasonably and vexatiously multiplying the proceedings.

Ms. Miera purchased her car on March 15, 1994, for $9,108.50, and the following month, on April 17, 1994, the collision occurred seriously injuring Ms. Miera and leaving her car totally damaged. Ms. Miera's automobile insurance policy with Dairyland (the Policy) included a provision for uninsured motorist insurance[1] as well as medical payment

---

[1]That provision states:

> We promise to pay damages, excluding punitive or exemplary damages, the owner or operator of an uninsured *motor vehicle* is legally obligated to pay because of bodily injury you suffer in a *car accident* while

(continued...)

and collision coverage.  Ms. Miera promptly notified Dairyland of the accident and

submitted claims under the Policy's collision and medical payment coverage for which

Dairyland respectively paid $5,137.50 to GMAC, the vehicle's lienholder, and $1,134.91

to Ms. Miera to reimburse her medical expenses.  Later unable to resolve Ms. Miera's

total personal and property losses, the parties submitted the dispute to arbitration, each

side selecting one arbitrator and then agreeing to the selection of a third.  Prior to the

arbitration hearing, David Graham, Ms. Miera's attorney, wrote Dairyland to document

four stipulations, one of which embodied the prior payments.[2]  Dairyland, in turn, wrote

back, articulating its understanding of the scope of the arbitration.[3]  Mr. Graham did not

---

[1](...continued)
*occupying* a car ....

[2]The letter stated, "We agree that Dairyland paid $5,137.50 to GMAC, pursuant to the collision coverage purchased by Renetta Miera, and that Dairyland paid $1,134.91 to Family Practice and Taos Physical Therapy pursuant to the medical payments coverage purchased by Renetta Miera."

[3]The letter stated in part:

>     This letter is to memorialize our telephone conversation this morning about how to present some issues to the arbitrators next week.  We finally agreed **not** to submit the third issue (the "legal issue") to the arbitrators next week, but agreed only to have them decide what damages should be awarded.  In fact, we agreed not to bring up the legal issue at the arbitration.  If necessary we will submit written briefs to the arbitrators regarding the legal issue of whether Dairyland is entitled to a credit or offset of amounts already paid on Ms. Miera's behalf.  If we do submit briefs, we agreed to do so on a time schedule.

>     Thus, we have stipulated as to the "legal responsibility of the
>                                                           (continued...)

respond to that letter. Subsequently, the Arbitration Panel found the total amount of damages was $17,134.91. Dairyland promptly paid Ms. Miera $10,862.50, a sum reflecting its deduction of the $6,272.41 already advanced.

Ms. Miera then filed the underlying action in the district court of Taos County seeking relief under three New Mexico statutory provisions: N.M. Stat. Ann. § 44-7-11 to confirm the arbitration award; N.M. Stat. Ann. §§ 59A-16-20 and 59A-16-30, Unfair Claim Practices Act; and §§ 57-12-2 and 57-12-10, Unfair Trade Practices. Alleging Ms. Miera was a citizen of New Mexico and it was not, and damages exceeded $50,000, Dairyland removed the action to federal court. Ms. Miera contested removal, alleging the amount in controversy on the face of her complaint did not exceed $50,000. The district court denied the motion to remand, concluding although the complaint alleged damages only of $41,028.51 were plaintiff to succeed on all of her claims, the Unfair Claim

[3](...continued)
uninsured motorist to pay your damages" and agreed that the arbitration would focus on what damages Ms. Miera suffered from the collision with Stephen Eich, or "the total amount of damages" to which she is entitled to recover as a result of this accident. You agreed to prepare a verdict form on which the arbitrators will denote the total amount of damages awarded, separating out the amount awarded for personal injury and the amount awarded for property damage.
....

We also agreed to inform the arbitrators about the amounts already paid by Dairyland for Ms. Miera as follows: $5,137.50 from collision coverage (if that is where it came from), and $1,134.91 from med-pay coverage. We agreed to tell the arbitrators that these amounts are provided for information purposes only and are not to be considered in determining the total amount of damages that Ms. Miera suffered from this collision.

- 4 -

Practice Act and Unfair Trade Practice Act provided for the recovery of attorney's fees, potentially bumping up the total recovery to the $50,000 requisite. The district court then granted Dairyland's motion for summary judgment dismissing all of Ms. Miera's statutory causes of action. In a separate order, the court found Mr. Graham's failure to cite the controlling case law was "reckless" and a "needless" increase of the cost of litigation and awarded $2,584.17 in attorney's fees and costs to be paid personally by Mr. Graham to Dairyland.

## I.  Diversity Jurisdiction

Ms. Miera maintains the district court erred in denying her motion to remand, insisting the total damages sought in her underlying complaint cannot exceed $41,028.51. She contends this figure already contains an award of attorney's fees under N.M. Stat. Ann. § 59A-16-30 and N.M. Stat. Ann. § 57-12-10. Thus, the court's speculating an award of attorney's fees would increase the total to meet the $50,000 jurisdictional amount was unfounded, she insists.

The courts must rigorously enforce Congress' intent to restrict federal jurisdiction in controversies between citizens of different states. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). For diversity jurisdiction under 28 U.S.C. § 1332(a), the amount in controversy must exceed $50,000. *St. Paul Mercury* examined this rule:

> The rule governing dismissal for want of jurisdiction in cases brought in the
> federal court is that, unless the law gives a different rule, the sum claimed
> by the plaintiff controls if the claim is apparently made in good faith. It
> must appear to a legal certainty that the claim is really for less than the

jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*Id.* at 288-89 (citations omitted). Once jurisdiction has attached, events subsequently defeating it by reducing the amount in controversy are unavailing. *Id.* Where a plaintiff has not instituted suit in federal court, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court...." *Id.* at 290.

Nevertheless, plaintiff's claims for damages control if they are made "in good faith," that is, if they evince to a "legal certainty" the claims total at least $50,000. Here, although we indulge a presumption in plaintiff's favor, we look to the face of her complaint to decide whether the jurisdictional amount is satisfied. Accepting plaintiff's argument that New Mexico law does not allow duplicative damages, *see **Hale v. Basin Motor Co.**,* 795 P.2d 1006, 1012 (N.M. 1990), the Count III claim alone reasonably read totals more than $50,000. That claim under the Unfair Trade Practice Act sought "triple damages calculated at present to be $41,028.51, attorneys fees, pre-judgment interest at the maximum allowable rate of fifteen percent form [sic] the date of the breach of the defendant's obligations to the plaintiff, post-judgment interest, costs, the expenses in

bringing this action and for such further relief as the court deems just, proper and necessary."

Thus, plaintiff sought in addition to $41,028.51 the attorney's fees permitted by statute. *See* N.M. Stat. Ann. § 57-12-10(c). The Supreme Court has long held that when a statute permits recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship. ***Missouri State Life Ins. Co. v. Jones***, 290 U.S. 199, 202 (1933). Plaintiff alleged in the fact section of her complaint that she had incurred "attorneys' fees in the amount of $6,854.00 to date to prosecute her uninsured motorist claim against the Defendant." These fees, together with plaintiff's claim for $41,028.51 treble damages in Count III, amount to $47,882.51, $2,117.50 short of the $50,000 jurisdictional threshold. Considering the realities of modern law practice and the complexities of this case, we cannot say that, viewed as of the date of removal, it would be unreasonable to expect plaintiff to incur an additional $2,117.50 in attorney's fees. The court therefore agrees with the district court that a reasonable attorney's fee alone, when added to the $41,028.51, would push the amount of plaintiff's claim in Count III above $50,000, without consideration of the pre-judgment interest or other costs and expenses sought.

## II. Offset under *Quinones*

Ms. Miera urges the district court ignored the dictates of ***Erie R.R. Co. v. Tompkins***, 304 U.S. 64 (1938), and resolved Dairyland's motion for summary judgment

under federal law while exercising its diversity jurisdiction. This result, she complains, overlooks a line of New Mexico cases prohibiting the insurer from offsetting any payments it made under the insured's uninsured motorist coverage (UMC).

The district court prefaced its reliance upon the Tenth Circuit case of **Quinones,** 804 F.2d at 1167, with the statement that New Mexico appellate courts had not yet decided whether an insurer is entitled to receive credit for amounts paid under medical payment and collision coverages prior to the entry of a final award. New Mexico has decided an insurer may not offset amounts paid under a separate workers' compensation policy from amounts paid under UMC, **Continental Ins. Co. v. Fahey**, 106 N.M. 603, 747 P.2d 249 (N.M. 1987); the employee may retain the difference between uninsured motorist benefits and workers' compensation benefits, although the employer paid the premiums for each coverage, **Draper v. Mountain States Mut. Cas. Co.**, 116 N.M. 775, 867 P.2d 1157 (N.M. 1994); the insurer could not offset benefits paid under workers' compensation coverage to an employee who then proceeded to arbitration of his UMC claim, **Mountain States Mut. Cas. Co. v. Vigil**, 121 N.M. 812, 918 P.2d 728 (N.M. Ct. App. 1996); and an insurer does not satisfy its duty to treat its interests and the interests of its insured equally when it requires the insured to release all claims, including subrogation claims, against its insured as a condition precedent to a policy limits settlement when there is a substantial likelihood of a recovery in excess of the policy limits. **Dairyland Ins. Co. v. Herman,** ___, P.2d ___, No. 1998-NMSC-005, 1997 WL 836531 (NM

- 8 -

Dec. 18, 1997). The result in each of these cases is premised upon New Mexico's express intention to liberally construe its statutory provisions on UMC. N.M. Stat. Ann. § 66-5-301; *see* **Chavez v. State Farm Mut. Auto. Ins. Co.,** 87 N.M. 327, 329, 533 P.2d 100, 102 (N.M. 1975); **Fahey**, 747 P.2d at 250, and where related statutes might affect those protections, to assure "reimbursement and [the] equitable distribution of the risk of loss." **Draper**, 867 P.2d at 1159 (citation omitted).

Nevertheless, New Mexico has not decided the precise issue presented here: whether under New Mexico law the insurer can offset against an arbitration award of UMC damages amounts previously paid under medical payment and collision coverages in the same automobile insurance policy. **Quinones** has decided the question albeit in a different procedural posture.

There, Lubin Quinones, injured in an automobile accident with an uninsured motorist, sued his insurer to recover damages under his UMC policy. The insurer removed the action to federal court. Although the jury found Mr. Quinones suffered damages of $25,000, he appealed the judgment contending the court erred in refusing to instruct the jury on the collateral source rule, which would have allowed him to recover past medical expenses although his insurer had already paid those claims under a separate clause in the insurance contract.

This court rejected the argument, confining the reach of the collateral source rule to the tort-feasor who should not benefit from the injured party's reimbursement from

another source, often insurance. 804 F.2d at 1171 (citing, D. Dobbs, *Handbook on the Law of Remedies* § 8.10, at 581 (1973)). "The collateral source rule removes the disincentive otherwise faced by potential victims to insure against harm or to accept gratuitous compensation from sources other than the tortfeasor for fear that the tortfeasor will not then be required to pay." *Id.*

However, in Mr. Quinones' case, the defendant, the insurer, is proverbially the collateral source. *Id.* "No policy would be served by requiring [the insurer] to twice pay [plaintiff's] past medical expenses," the court observed. *Id.* In effect, the source must be "sufficiently collateral" or independent to assure an unwarranted double recovery has not occurred. The court concluded the insurer's having already completely reimbursed plaintiff's past medical expenses should not be charged twice.

Here, too, Dairyland paid medical and property loss bills totaling $6,272.41 prior to arbitration. The arbitrators awarded $17,134.91, $1,134.91 of which represented "expense of necessary medical care." Dairyland had already paid $1,134.91 to Ms. Miera to reimburse medical and physical therapy expenses. For loss of personal property, the arbitrators awarded $7,000. Dairyland had already reimbursed $5,137.50 to the lienholder on Ms. Miera's automobile. The parties agreed the scope of arbitration would be limited to deciding the total amount of damages due, reserving the legal question of the offset to later resolution. We think the answer to that legal question was resolved by *Quinones*; therefore, we are bound by its holding to conclude, in New Mexico, the

- 10 -

insurer may offset from payment under a UMC policy monies previously paid under the insured's medical payment and collision coverage. We thus affirm the district court's grant of summary judgment to Dairyland on this issue.

### III. Sanctions

In its response in opposition to Ms. Miera's motion for partial summary judgment to confirm the arbitration award, Dairyland made reference to the application of the collateral source rule to this case, citing, in support, "*See,* ***Quinones v. Pennsylvania General Ins. Co.****,* 804 F.2d 1167*,* 1171 (10th Cir.1986) (application of the collateral source rule inappropriate in a case where plaintiff was seeking to recover his medical expenses twice, once under his policy's medical expense provisions and again under the uninsured motorist provisions)." Ms. Miera had not referenced the collateral source rule to frame her entitlement to full payment. In its subsequent motion for summary judgment, Dairyland again cited ***Quinones*** in another single reference while focussing the bulk of its brief on the same New Mexico cases Ms. Miera cited.

Against this background, once the district court granted summary judgment in Dairyland's favor, relying on ***Quinones***, counsel for defendant moved for sanctions under 28 U.S.C. § 1927, claiming plaintiff's counsel's ***filing*** of the complaint was frivolous, brought to harass Dairyland and needlessly increased the cost of the litigation because of that conduct. The court agreed, finding plaintiff's counsel's failure to cite ***Quinones*** in any motion or response was unreasonable and vexatious, demonstrating "reckless

disregard of his duty of candor toward this Court." The court relied upon *Braley v. Campbell,* 832 F.2d 1504 (10th Cir. 1987), in which we articulated the proper standard for imposing attorney's fees and costs personally against an attorney under § 1927.[4]

That standard rejected a subjective good faith inquiry and concluded, instead, "conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court," warrants the imposition of excess costs, expenses, or attorney's fees personally against the attorney responsible for unreasonably multiplying the proceedings. *Id.* at 1512. After all, "[t]o excuse objectively unreasonable conduct by an attorney would be to state that one who acts 'with an empty head and a pure heart' is not responsible for the consequences." *Id. (*quoting *McCandless v. Great Atlantic & Pacific Tea Co.*, 697 F.2d 198, 200 (7th Cir. 1983).

This standard is then used to decide whether "by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law," an attorney subjects himself to sanctions under § 1927. *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). "A lawyer's reckless indifference to the law may impose substantial costs on the adverse party. Section 1927 permits a court to insist that the attorney bear the

[4]Section 1927 of 28 U.S.C. states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

costs of his own lack of care." *Id.* Sanctions are appropriate, then, when an attorney is cavalier or "bent on misleading the court," *Herzfeld & Stern v. Blair*, 769 F.2d 645, 647 (10th Cir. 1985); intentionally acts without a plausible basis, *Knorr Brake Corp. v. Harbil, Inc.*, 738 F. 2d 223, 227 (7th Cir. 1984); when the entire course of the proceedings was unwarranted, *FDIC v. Calhoun*, 34 F.3d 1291 (5th Cir.1994); or when certain discovery is substantially unjustified and interposed for the improper purposes of harassment, unnecessary delay and to increase the costs of the litigation, *Resolution Trust Corp. v. Dabney*, 73 F.3d 262 (10th Cir. 1995). Because § 1927 is penal in nature, "the award should be made 'only in instances evidencing serious and standard disregard for the orderly process of justice.'" *White v. American Airlines, Inc.*, 915 F.2d 1414, 1427 (10th Cir. 1990) (quoting *Dreiling v. Peugeot Motors of Am., Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985)).

We do not believe plaintiff's counsel's failure to cite *Quinones* evidences a reckless disregard of his duty to the district court to inquire into the law prior to filing the complaint and the motion for summary judgment as the district court found. First, plaintiff's counsel filed this action in New Mexico state court relying upon a line of New Mexico cases broadly interpreting UMC coverage under the statutory scheme. Were counsel to reasonably research any of these New Mexico cases for the state proceeding he had filed, he would have uncovered no mention of *Quinones.* Although the district court found once the case was removed counsel should have looked into the federal court

interpretation of state law, that specific inquiry would have borne scant result because *Quinones* does not cite any New Mexico law. Indeed, *Quinones* is cited for the proposition of acquiring personal jurisdiction over a non-resident defendant. *Quinones* does appear in a Tenth Circuit search using the terms "offset" and "uninsured motorist coverage." However, if counsel had followed Dairyland's own characterization deeming its conduct as subrogating itself to its prior payments, plaintiff's counsel might have also missed *Quinones*.

In *Wigood v. Chicago Mercantile Exchange*, 981 F.2d 1510 (7th Cir. 1992), the Seventh Circuit reversed the imposition of § 1927 sanctions based upon plaintiffs' attorney's failure to address a key Seventh Circuit case which barred a claim for judicial review of the Chicago Mercantile's disciplinary hearing. Instead, the Seventh Circuit deciphered what counsel sought was a review of the legality of the underlying procedures upon which the disciplinary hearing was based. While acknowledging the "subtlety of the distinction," *id.* at 1522, the court concluded counsel's argument was not completely without merit and his failure to cite the case was an inappropriate basis for sanctions.

While we would hardly applaud plaintiff's counsel's failure to respond in any manner to Dairyland's motion for summary judgment based on his belief *Quinones* was not "important precedent," we cannot find that failure alone rises to the level of intentional or reckless disregard of counsel's duties to the court under *Braley,* nor that it is tantamount to bad faith. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980).

Thus, though not laudable, plaintiff's counsel's failure to cite *Quinones* is not such objectively unreasonable conduct under the circumstances of this case to warrant the imposition of sanctions. Although no New Mexico case had addressed the precise issue presented here, New Mexico cases had consistently voiced policy concerns protecting uninsured motorist recoveries under certain circumstances. Plaintiff's counsel did not misrepresent the state of New Mexico law to the district court. While inappropriate and unavailing under Tenth Circuit law, we believe this conduct does not warrant § 1927 sanctions under *Braley*. We thus hold the court abused its discretion in imposing attorney's fees and costs of $2,584.17 personally against David Graham.

We therefore **AFFIRM** the denial of plaintiff's motion to remand the action to state court and the court's judgment offsetting previously paid medical and property expenses from the total arbitration award. We **REVERSE** the district court's imposition of § 1927 sanctions.